**LION BOULOS, Individually and doing business as Abco Food Stores, et al., Plaintiffs-Appellees,**

v.

**Richard D. WILSON, et al., Defendants-Appellants.**

No. 87–2013.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1987.

---

Frank A. Rosenfeld, Henry Oncken, U.S. Atty., Hays Jenkins, Frank A. Conforti, Asst. U.S. Attys., Eileen O'Brien, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, John F. Cordes, Washington, D.C., for defendants-appellants.

Daniel Tucker Kamin, Houston, Tex., for plaintiffs-appellees.

Before CLARK, Chief Judge, GEE and RUBIN, Circuit Judges.

CLARK, Chief Judge:

Wilson appeals a district court order compelling limited discovery before ruling on his claim of qualified immunity. Finding that the discovery order does not encroach substantially upon Wilson's immunity claim and is therefore not appealable, we dismiss.

I.

This appeal arises from the so-called Houston fuel switching scam. In December 1984, the Environmental Protection Agency (E.P.A.) conducted field inspections of twelve gasoline retail outlets in the Houston area. The stations were suspected of substituting leaded for unleaded gasoline in commercial pumps. The inspections were conducted by employees of the Bionetics Corporation hired by the E.P.A. to investigate possible violations of the unleaded fuel regulations.[1]

---

1. Regulations adopted by the E.P.A. provide that no retailer or wholesaler, his employee or agent may "sell, dispense, or offer for sale, gasoline represented to be unleaded unless such gasoline meets the defined requirements for unleaded gasoline in 80.2(g)...." 40 C.F.R. § 80.22(a) (1987).

The inspectors collected gasoline samples from unleaded pumps and obtained fuel delivery records from the stations. Of twenty samples taken, eighteen contained more than the legal limit of 0.05 grams of lead per gallon. The delivery records indicated that 191 deliveries of high lead gasoline had been pumped into unleaded storage tanks at these stations.

In August 1985, the E.P.A. issued Notices of Violation to four gasoline retailers and six distributors advising them that they had committed numerous violations of the Clean Air Act and faced possible fines of $750,000.00 if they failed to negotiate a settlement within 90 days. The station owners failed to settle and the Department of Justice filed civil enforcement actions which are still pending.[2]

In January 1986, Lion Boulos and several of the other station owners (collectively "Boulos") filed a separate suit in the Southern District of Texas naming as defendants the E.P.A., several E.P.A. officials in their individual and professional capacities, and the three contract agents who had conducted the inspections (collectively "Wilson"). The complaint includes allegations that Wilson violated Boulos's Fourth Amendment rights by conducting warrantless searches of the gas stations and seizing gasoline samples and records without voluntary consent. Boulos seeks damages in excess of $65 million under 42 U.S.C. §§ 1983, 1985 and 1986, the Federal Tort Claims Act and directly under the Constitution and an injunction against the use or dissemination of the illegally seized information.

In April 1986, Wilson filed a motion to dismiss or in the alternative for summary judgment which asserted that the inspections did not violate Boulos's constitutional rights because the agents obtained permission before proceeding with the searches. Wilson further alleges that the three contract agents and the E.P.A. officials in their personal capacities enjoy a qualified immunity from suit.

The district court did not rule on the motion but instead entered an order in November 1986 stating that it was unable to decide the threshold question of qualified immunity without three acts of preliminary discovery. The order directed that:

1. The government produce all Justice Department and Environmental Protection Agency field instructions and policy directives in effect from January 1, 1983 through December 1984, distributed to the E.P.A.'s Houston and Dallas offices, dealing with the use of contract agents;[3]

2. The plaintiffs may depose the E.P.A.'s contract agents who visited their clients' three stations in December 1984. Questions are to be limited to what transpired at the sites; and

3. The parties are to submit jointly in twenty days an agreed factual narrative of what transpired at the sites in December 1984.

In December 1986, Wilson moved for reconsideration and a stay of the November order. The district court denied the motion. Wilson now appeals these two orders on the basis that the district court may not order discovery before ruling on the immunity claim. We dismiss the appeal on the basis that the discovery order is not appealable; however, because this is a question of first impression in the Fifth Circuit, we write to explain the reasoning behind our decision.

## II.

Ordinarily, an order compelling limited discovery is interlocutory and not appealable under the final judgment rule, 28 U.S.C. § 1291 (1986). However, the Supreme Court has held that immediate appeal may be taken from a limited class of interlocutory orders which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require

**2.** *United States v. Lion Boulos, et al.,* Civil Action No. H–86–2712 (S.D.Tex.).

**3.** The defendants have since produced the requested Justice Department and E.P.A. field instructions and do not contest this portion of the order.

that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) the Supreme Court held that orders denying a substantial claim of qualified immunity are immediately appealable under the collateral order doctrine. The Fifth Circuit has held that a district court's refusal to rule on a claim of qualified immunity also falls within the collateral order doctrine because:

" [the] defendant's entitlement under immunity doctrine to be free from suit and the burden of avoidable pretrial matters is effectively lost if the case erroneously goes to trial ... the refusal to rule on such claims 'conclusively determines the defendant's claim of right not to stand trial' ... [and because] the claim of immunity in both cases 'is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated.' "

*Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir.1986) (citations omitted). Wilson claims that because qualified immunity guarantees government officials immunity from all pretrial discovery, the district court's order in this case is immediately appealable. He argues that his right to be free from discovery will be effectively lost if the district court's order is not granted immediate review and that the issue of immunity is conceptually distinct from the merits of the case. We disagree.

## III.

■ Qualified immunity protects government officials serving in a discretionary capacity from liability for actions undertaken in their official capacity. The purpose of the doctrine is to avoid "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). A defendant entitled to claim qualified immunity is shielded not only

from liability but also from "the costs of trial [and] ... the burdens of broad-reaching discovery." *Harlow*, 102 S.Ct. at 2738.

In *Mitchell v. Forsyth, supra,* the Supreme Court addressed an official's right to claim immunity from discovery. It stated:

"Indeed, *Harlow* emphasizes that even such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this kind can be peculiarily disruptive of effective government.' ... Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."

*Mitchell*, 105 S.Ct. at 2815–16. This Circuit has also recognized an immune defendant's right to be free of the burdens of broad-reaching discovery. In *Jacquez v. Procunier*, 801 F.2d 789 (5th Cir.1986) we stated that "[c]ourts have an obligation ... to carefully scrutinize a plaintiff's claim before subjecting public officials to the burdens of broad-reaching discovery." *Jacquez*, 801 F.2d at 791.

■ *Harlow, Mitchell* and *Jacquez* make clear that qualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad. Discovery designed to flesh out the merits of a plaintiff's claim before a ruling on the immunity defense or discovery permitted in cases where the defendant is clearly entitled to immunity would certainly fall within this category. Immediate appeal would lie from these orders because *Mitchell, Harlow* and *Jacquez* require that immune defendants be exempt from avoidable, burdensome pretrial matters.

■ However, a second class of discovery permitted before a ruling on a defendant's motion to dismiss does not encroach upon his qualified immunity claim. Discovery orders entered when the defendant's immunity claim turns at least partially on a factual question; when the district court is unable to rule on the immunity defense without further clarification of the facts; and which are narrowly tailored to uncover only those facts needed to rule on

the immunity claim are neither avoidable nor overly broad. Such orders are not immediately appealable. The instant case falls within the latter category, not the former.

■ We fail to see how the district court's order could be considered avoidable because without conducting this discovery, the court could not rule on Wilson's immunity claim. To rule on the claim, the court must decide whether the inspections violated "clearly established statutory or constitutional rights of which a reasonable person would have known" *Harlow, supra,* 102 S.Ct. at 2738. Boulos claims that two of Wilson's actions violated clearly established rights: hiring contract agents to perform the inspections despite cases holding that they are not "authorized representatives" within the meaning of the Clean Air Act [4] and seizing gasoline samples and delivery records without warrants or voluntary consent. The first issue is a pure question of law which can be resolved by the district court without discovery. Standing alone, the district court's ruling on this issue would be immediately appealable. *See Helton, supra,* 787 F.2d at 1017. However, the district court was unable to resolve the second, largely factual issue based on the conflicting versions of the inspections recounted by Boulos and Wilson.

Wilson contends that the searches did not violate Boulos's Fourth Amendment rights because the contract agents had permission to take gasoline samples and delivery records. Instructions attached to the E.P.A.'s contract with Bionetics directed the agents to "leave if you are refused permission to enter or complete the inspection." A declaration submitted by Wallace, the E.P.A.'s field inspection team leader, states that the agents requested permission to enter and inspect Boulos's facilities and that had they been denied permission, they would have left.

By contrast, Boulos asserts that his gas station attendants and managers did not voluntarily consent to the inspections. He states that the inspectors coerced consent by falsely representing themselves as federal agents and by threatening the station attendants with legal action if they did not acquiesce to the searches. Boulos further contends that the station managers were incapable of giving informed consent because they barely spoke English.

It is a basic principle of Fourth Amendment jurisprudence that consent to a warrantless search obtained through coercion, duress or trickery, is not sufficient to overcome constitutional infirmities. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Varona-Algos,* 819 F.2d 81, 83 (5th Cir. 1987); *United States v. Tweel,* 550 F.2d 297, 299 (5th Cir.1977). Additionally, this Circuit has held that a defendant's awareness of his right to refuse consent to a

---

**4.** The Clean Air Act, 42 U.S.C. § 7414 et seq. (1986), provides that:

  (2) the Administrator or his authorized representative, upon presentation of his credentials—

  (A) shall have a right of entry to, upon, or through any premises of such person or in which any records required to be maintained under paragraph (1) of this section are located, and

  (B) may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under paragraph (1), and sample any emissions which such person is required to sample under paragraph (1).

The fuel regulations, 40 C.F.R. § 80.4 (1987), provide that:

  The Administrator or his authorized representative, upon presentation of appropriate credentials, shall have a right to enter upon or through any refinery, retail outlet, wholesale purchaser-consumer facility, the premises or property of any distributor, or any place where gasoline is stored, and shall have the right to make inspections, take samples and conduct tests to determine compliance with the requirements of this part.

Three circuits are in conflict regarding whether a contract agent is an authorized representative within the meaning of these provisions. In *United States v. Stauffer Chemical Co.,* 684 F.2d 1174 (6th Cir.1982), *aff'd on other grounds,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) and *Stauffer Chemical Co. v. E.P.A.,* 647 F.2d 1075 (10th Cir.1981) the Sixth and Tenth Circuits held that contract agents are not authorized representatives for purposes of the Clean Air Act. In *Bunker Hill Co. Lead and Zinc Smelter v. E.P.A.,* 658 F.2d 1280 (9th Cir.1981), the Ninth Circuit held that they are. The Fifth Circuit has not ruled on the issue.

search or seizure is relevant to the issue of voluntariness. *United States v. Davis*, 749 F.2d 292, 194 (5th Cir.1985), *cert. denied*, — U.S. —, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986); *United States v. D'Allerman*, 712 F.2d 100, 103 (5th Cir.1983), *cert. denied*, 464 U.S. 899, 104 S.Ct. 254, 78 L.Ed.2d 240 (1983). Boulos's pleadings and affidavits call into question whether the attendant's permission, if given, was coerced and whether the attendants may not have known that they could withhold consent because they spoke broken English. The district court chose not to rule on this crucial issue while accounts of the inspections were in conflict but instead ordered discovery to determine whether the station attendants gave voluntary consent to the inspections. Because the court felt it could not rule on the immunity claim without this discovery, it could not be classified as an avoidable pretrial matter.

Nor do we feel that the discovery was overly broad. The court carefully tailored its order to uncover only those facts necessary to rule on the immunity defense. It limited discovery to a single topic—the events that occurred at the gas station inspections—and limited the number of defendants from whom discovery may be taken to three. This discovery could hardly be considered burdensome to the E.P.A. given the narrow scope of permissible questioning and the fact that the deponents are not E.P.A. employees but rather contract agents whose entitlement to immunity is yet to be established.[5] Additionally, the entire burden of discovery does not fall on Wilson. The order requires Boulos *and* Wilson to submit a joint factual narrative detailing what occurred at the station inspections. The order does not concern the merits of Boulos's claim. It is neither overly broad nor intrusive within the meaning of *Harlow, Mitchell* and *Jacquez*.

Further, Wilson's immunity defense is not conceptually distinct from the merits of Boulos's claim as required by *Cohen*. Unlike denials of qualified immunity which are immediately appealable because they turn on an issue of law, *Mitchell, supra*

105 S.Ct. at 2817; *Helton, supra*, 787 F.2d at 1017, Wilson's immunity defense turns on the factual issue of consent. In *Velasquez v. Senko*, 813 F.2d 1509 (9th Cir.1987), the Ninth Circuit held that an order denying a motion to dismiss by Immigration and Naturalization Service agents based on qualified immunity was not immediately appealable because it involved a pure question of fact. The I.N.S. agents claimed immunity from a damage suit stemming from a warrantless search on the basis that they were not present at the search. The Ninth Circuit refused to grant an immediate appeal of the order denying the motion to dismiss because the agents did not "claim that the law they [were] accused of violating was not clearly established, [i]nstead, they present[ed] a disputed factual issue, inextricably bound up in the underlying claim ..." *Velasquez*, 813 F.2d at 1511. *Velasquez* cannot be distinguished from the instant appeal.

## IV.

Finally, Wilson contends that under *Elliot v. Perez*, 751 F.2d 1472 (5th Cir. 1985), he is entitled to summary judgment unless Boulos alleges facts in his pleadings and affidavits which are sufficiently detailed to overcome the immunity defense. In *Perez*, we ruled that a complaint which raises the likely issue of immunity cannot be cast in "broad, indefinite and conclusory terms" but must "include detailed facts supporting the contention that the plea of immunity cannot be sustained." *Perez*, 751 F.2d at 1479. In *Brown v. Texas A & M University*, 804 F.2d 327 (5th Cir.1986), we reiterated our continuing reliance on *Perez*. *Jacquez v. Procunier, supra*, clarified the immune defendant's right to avoid ardous pretrial discovery when the plaintiff has failed to plead facts which, if true, would defeat the immunity claim.

Wilson's reliance on *Perez* is misplaced. As discussed earlier, Boulos's pleadings and affidavit do state facts which could defeat Wilson's qualified immunity defense. However, conflicting versions of

**5.** *See* F.N. 4, *supra*.

the facts presented by the parties have raised material doubts about what actually transpired at the stations. The district court properly chose not to rely solely on Boulos's version of the facts, but, instead, to obtain a clearer picture of what occurred at the inspections by the use of limited discovery.

## V.

The district court's order is not appealable. The appeal is

DISMISSED.