**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JONATHAN T. GARRETT,

      Plaintiff - Appellee,

v.

C.A. STRATMAN, M.D., Chief of
Medical Services, ADX-USP,
Florence, Colorado,

      Defendant - Appellant.

No. 00-1028

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 97-Z-1217)**

---

Dennis W. Hartley, Colorado Springs, Colorado, for Plaintiff-Appellee.

Michael E. Hegarty (Thomas L. Strickland, United States Attorney, Kathleen L.
Torres, Assistant United States Attorney, with him on the briefs), Denver,
Colorado, for Defendant-Appellant.

---

Before **TACHA**, Chief Judge, **LUCERO**, Circuit Judge, and **BROWN**, District Judge. [*]

---

**LUCERO**, Circuit Judge.

---

Jonathan T. Garrett, a federal inmate, brought this __Bivens__ [1] suit against C.A. Stratman, alleging denial of medical care in violation of the Eighth Amendment. The district court denied Stratman's motion for summary judgment on the matter of qualified immunity and granted Garrett's motion for additional discovery pursuant to Federal Rule of Civil Procedure 56(f). We conclude that we lack jurisdiction and dismiss Stratman's appeal of those rulings.

**I**

Garrett is serving a life sentence at the United States Pentitentiary Administrative Maximum Facility ("ADX") in Florence, Colorado. He alleges denial of medical care in violation of the Eighth Amendment by a number of parties, including appellant. [2] Garrett's shoulder was injured during a prison yard

---

[*] The Honorable Wesley E. Brown, Sr., Senior District Judge of the United States District Court for the District of Kansas, sitting by designation.

[1] __Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics__, 403 U.S. 388 (1971).

[2] Garrett initially sued six defendants. The district court dismissed four parties, concluding that Garrett's claims against them were frivolous. A fifth defendant, George Klingner, was dismissed for lack of personal jurisdiction. In a related appeal, we affirmed that dismissal.

fight on June 14, 1995. According to the complaint, his condition was ignored until August 25, 1995, when the shoulder injury was diagnosed by Dr. Jere Sutton, an orthopedic consultant. Although Dr. Sutton recommended reconstructive surgery, appellant was not transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri, for consultation with an orthopedic surgeon until May 1996, eleven months after the injury. Garrett alleges that "by that time, . . . proper medical treatment . . . had been so delayed that the stabilization and reconstructive surgery was not able to be performed with any degree of success that allowed [him] to obtain maximum medical benefit for his severe shoulder injury." (Appellant's App. at 138 (Complaint).) The eleven-month delay, according to the complaint, caused Garrett physical and mental pain and suffering as well as severe disability.

Stratman, a practicing physician for more than thirty years, was the Clinical Director at ADX during the relevant time period. In his complaint, Garrett alleges that Stratman "repeatedly told the Plaintiff that treatment for his injury would be forthcoming; however, no treatment occurred." (Id. at 141.) This, according to Garrett, amounted to deliberate indifference to his known medical needs in violation of the Eighth Amendment.

Stratman submitted an affidavit in which he attested that although he saw Garrett "on numerous occasions for various medical complaints" and "began the

process to attempt to have Mr. Garrett transferred to Springfield for surgery," he was "advised . . . that the transport must be delayed until specifically directed by the designator's office to transport." ( Id. at 51–52.) According to Stratman, "[a]s Clinical Director at the ADX, I could merely recommend transfer to a medical center for treatment. I did not have the authority to order an immediate transfer or to have the surgery conducted locally." ( Id. at 52.) Materials submitted by Stratman on appeal state that one of his duties as clinical director was to "ensure that . . . [e]very effort is made to return the inmate to the institution or to transfer him/her to a Medical Referral Center as early as the patient's condition allows." (Appellant's Br. Attach. 4 at 4 (Federal Bureau of Prisons Program Statement 6000.05).) Also submitted with the summary judgment motion were fifty-four pages of Garrett's medical records, a large number of which were reviewed and initialed contemporaneously by Stratman, that show that Garrett made a number of medical visits regarding his shoulder pain while his transfer was pending.

Stratman moved for summary judgment, arguing that he was entitled to qualified immunity. [3] As part of his response, Garrett's counsel submitted an

---

[3] Stratman initially moved to dismiss the complaint for failure to state a claim upon which relief could be granted, Fed. R. Civ. P. 12(b)(6), but because matters outside the complaint were presented to the court—i.e., affidavits and other evidence—Stratman's motion to dismiss was treated as one for summary

(continued...)

-4-

affidavit requesting that the motion be denied to allow additional discovery under Federal Rule of Civil Procedure 56(f). The district court adopted a magistrate judge's recommendation to deny summary judgment and grant Garrett's request for additional discovery. On appeal, Stratman challenges the district court's denial of summary judgment on the grounds that Garrett (1) "did not allege, or submit any evidence, that Stratman was responsible for the delay in [his] transfer," and (2) "failed to submit any evidence that the delay in surgery caused any harm." (Appellant's Br. at 1–2 (statement of the issues).) He states that "[s]ince Garrett did not allege that Dr. Stratman had any authority to effectuate his transfer, or submit any evidence in that regard, under Garrett's version of the facts, Dr. Stratman did not violate clearly established law." (Id. at 4 (internal quotation omitted).) Finally, Stratman argues (3) that the district court erred by granting Garrett's Rule 56(f) motion for additional discovery.

## II

The Eighth Amendment states that the federal government shall not inflict cruel and unusual punishments. The Supreme Court has held that an inmate's rights under the amendment may be violated by a prison official's failure to prevent harm. Farmer v. Brennan, 511 U.S. 825, 833–34 (1994). "Having

---

[3](...continued)
judgment and disposed of under Fed. R. Civ. P. 56.

incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." Id. at 833 (quotation and brackets omitted). A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs—if he "knows of and disregards an excessive risk to inmate health or safety." Id. at 837; Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).

To demonstrate a violation, an inmate must satisfy both objective and subjective elements. "The objective component is met if the deprivation is sufficiently serious." Sealock, 218 F.3d at 1209 (quotation omitted). "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)); see Sealock, 218 F.3d at 1209. The subjective component—deliberate indifference—is met if the prison official both was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

-6-

Farmer, 511 U.S. at 837. [4]

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, cf. [J. Hall, General Principles of Criminal Law 118 (3d ed. 1982)] (cautioning against "confusing a mental state with proof of its existence"), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Cf. [1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7, at 335 (1986)] ("[I]f a risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of").

Id. at 842; see Oxendine, 241 F.3d at 1276. Finally, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." Oxendine, 241 F.3d at 1276 (quotation omitted). We have held that the substantial harm requirement may be

---

[4] Implicit in this formulation is that the official must have in fact played a role in the challenged conduct. We have recently held that a prison medical professional who serves "solely . . . as a gatekeeper for other medical personnel capable of treating the condition" may violate an inmate's Eighth Amendment rights if he "delays or refused to fulfill that gatekeeper role." Sealock, 218 F.3d at 1211. In such a case, the standard deliberate indifference test applies. Id. at 1211–12.

During oral argument, Garrett's counsel conceded that a mere delay in treatment, without more, could not constitute deliberate indifference. The cases support that proposition. Although a delay in treatment is a relevant consideration, Oxendine, 241 F.3d at 1278; Sealock, 218 F.3d at 1210, the ultimate finding of deliberate indifference necessarily requires findings that the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that he drew that inference.

satisfied by lifelong handicap, permanent loss, or considerable pain. Id. at 1278 ("In addition, the delay in seeking specialized treatment apparently caused Oxendine substantial harm due to the fact that a specialist was not obtained until after a substantial portion of the reattached finger had already been lost to decay, and because Oxendine experienced considerable pain while the finger continued to rot."); Sealock, 218 F.3d at 1210; see also Estelle v. Gamble, 429 U.S. 97, 104 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976))).

Under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971), damages may be obtained for "injuries consequent upon a violation" of the Eighth Amendment by federal officials. See Farmer, 511 U.S. at 831. We have recently reiterated, "[a]lthough actions for damages provide an important remedy for individuals injured by governmental officials' abuse of authority, such actions sometimes subject officials to costly and harassing litigation and potentially inhibit officials in performing their official duties." Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001) (citing Anderson v. Creighton, 483 U.S. 635, 638 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982)). The doctrine of qualified immunity accommodates this

conflict: it "is intended to protect the public interest by encouraging public officials to act independently and without fear of the consequences if there is no violation of clearly established rights." 15A Charles Alan Wright et al., Federal Practice and Procedure § 3914.10, at 651 (1992); see also Gross, 245 F.3d at 1155. When qualified immunity is asserted as a defense, the plaintiff must show that "(1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); see Behrens v. Pelletier, 516 U.S. 299, 305 (1996); Harlow, 457 U.S. at 818 ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Although a question regarding whether a given constitutional or statutory right was "clearly established" at the time the defendant acted presents a "purely legal question," Siegert v. Gilley, 500 U.S. 226, 232 (1991), resolution of qualified immunity may in some instances require a "fact-related . . . determination," Johnson v. Jones, 515 U.S. 304, 307 (1995).

Supreme Court authority "makes clear" that qualified immunity "is meant to give government officials a right, not merely to avoid 'standing trial,' but also

to avoid the burdens of 'such pretrial matters as discovery, as inquiries of this kind can be peculiarly disruptive of effective government.'" Behrens, 516 U.S. at 308 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). As a result, although we generally lack jurisdiction to review denials of summary judgment in other contexts, Mick v. Brewer, 76 F.3d 1127, 1133 (10th Cir. 1996) (citing Wilson v. Meeks, 52 F.3d 1547, 1551 (10th Cir. 1995)), we can review certain denials when they involve qualified immunity. Thus, we determine whether we have jurisdiction over any portions of this appeal.

## A

Subject matter jurisdiction can not be waived. Although appellee has ignored and appears to concede it, we have a "special obligation to satisfy" ourselves of appellate jurisdiction. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (quotation omitted); see Tuck v. United Servs. Auto Ass'n, 859 F.2d 842, 844 (10th Cir. 1988).[5] In this case, appellant seeks review of the district court's denial of summary judgment by availing himself of our

---

[5]

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994) (internal citations omitted).

jurisdiction to review final decisions of the district courts, 28 U.S.C. § 1291.

"A district court's denial of a defendant's summary judgment motion based on qualified immunity is an immediately appealable 'collateral order' when the issue appealed concerns whether certain facts demonstrate a violation of clearly established law." Gross, 245 F.3d at 1156 (citing Mitchell, 472 U.S. at 527–28). [6] At one time the law of this Circuit was that denials of summary judgment in the qualified immunity context were always appealable under the collateral order doctrine, [7] but the Supreme Court abrogated that rule in Johnson v. Jones. The Court stated:

> We now consider the appealability of a portion of a district court's summary judgment order that, though entered in a "qualified immunity" case, determines only a question of "evidence sufficiency," i.e., which facts a party may, or may not, be able to prove at trial. This kind of order, we conclude, is not appealable. That is, the District Court's determination that the summary judgment record in this case raised a genuine issue of fact concerning petitioners' involvement in the alleged beating of respondent was not a 'final decision' within the meaning of the relevant statute.

515 U.S. at 313. Johnson v. Jones thus establishes a clear rule of no jurisdiction for factual, "I didn't do it" cases. 15A Wright et al., supra, § 3914.10, at 195

---

[6] A collateral order may be appealable as a final decision if the order "'[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment.'" Johnson v. Jones, 515 U.S. at 310 (quoting P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993)).

[7] See Austin v. Hamilton, 945 F.2d 1155, 1157, 1162–63 (10th Cir. 1991).

(2000 Supp.).

The rule has been restated a number of times by this Court, most recently in Gross, 245 F.3d at 1156: "Courts of appeals clearly lack jurisdiction to review summary judgment orders deciding qualified immunity questions solely on the basis of evidence sufficiency—'which facts a party may, or may not, be able to prove at trial.'" Id. (quoting Johnson v. Jones, 515 U.S. at 313). "In applying the qualified immunity standard, the Supreme Court has directed that appellate courts may not review a district court's resolution of disputed facts, but may review only purely legal determinations." Cruz, 239 F.3d at 1187. [8] We "must scrupulously avoid second-guessing the district court's determinations regarding whether [plaintiff] has presented evidence sufficient to survive summary judgment." Clanton v. Cooper, 129 F.3d 1147, 1153 (10th Cir. 1997).

A corollary of the rule sanctioning review of abstract legal questions is that

---

[8] The quintessential "purely legal determination" fit for appellate resolution after a denial of summary judgment is whether a constitutional right was clearly established at the time the facts giving rise to the case occurred. See, e.g., Cruz, 239 F.3d at 1187 (holding that jurisdiction existed to review the district court's determination that a right was clearly established); McFarland v. Childers, 212 F.3d 1178, 1185 (10th Cir. 2000) (same); Johnson v. Martin, 195 F.3d 1208, 1215 (10th Cir. 1999) (same); Malik v. Arapahoe County Dep't of Soc. Servs., 191 F.3d 1306, 1314–15 (10th Cir. 1999) (same); Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997) (same); Wilson, 98 F.3d at 1252 (same); Mick, 76 F.3d at 1133 (same). Whether a right is clearly established is exactly "the kind of abstract legal issue[] separate from the fact-related issues that will arise at trial" required to invoke the Court's final decision jurisdiction. McFarland, 212 F.3d at 1185 (quoting Johnson v. Martin, 195 F.3d at 1214).

when the material facts are undisputed, or when the plaintiff's allegations are taken as true, denial of summary judgment on qualified immunity resolves an abstract issue of law and is immediately appealable. See Benefield v. McDowall, 241 F.3d 1267, 1270 (10th Cir. 2001); Johnson v. Martin, 195 F.3d 1208, 1214–15 (10th Cir. 1999); Clanton, 129 F.3d at 1153; Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997). Another corollary is that when a

> district court conclude[s] issues of material fact exist without making explicit factual findings, we must review the record to extract the facts the district court likely relied on in reaching its conclusion. If we determine the district court's conclusion rests on findings of evidence sufficiency, we must dismiss for lack of jurisdiction.

Gross, 245 F.3d at 1157 (internal citation omitted); see Armijo v. Wagon Mound Pub. Schs., 159 F.3d 1253, 1259 (10th Cir. 1998). [9]

Prior to resolution of qualified immunity, "appellate jurisdiction is invoked when a defendant . . . is faced with discovery that exceeds that narrowly tailored

---

[9] Once jurisdiction over the abstract issue of law is established, the Court, in its discretion, may exercise pendent appellate jurisdiction to review other issues. See Wilson, 98 F.3d at 1252. But cf. Johnson v. Jones, 515 U.S. at 318 (assuming that pendent appellate jurisdiction exists but stating that "it seems unlikely that courts of appeals would do so in a case where the appealable issue appears simply a means to lead the court to review the underlying factual matter"); Cruz, 239 F.3d at 1187 (declining to exercise pendent jurisdiction and stating that the Court "lack[ed] authority to the extent that Defendants seek interlocutory review of the district court's ruling that genuine disputes of fact precluded summary judgment based on qualified immunity" (quotation omitted)); Mick, 76 F.3d at 1133.

to the question of qualified immunity." Lewis v. City of Fort Collins, 903 F.2d 752, 754 (10th Cir. 1990) (quotation and brackets omitted). As we said in Maxey v. Fulton, 890 F.2d 279, 282 (10th Cir. 1989) (quoting Lion Boulos v. Wilson, 834 F.2d 504, 507 (5th Cir. 1987)),

> [q]ualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad. Discovery designed to flesh out the merits of a plaintiff's claim before a ruling on the immunity defense or discovery permitted in cases where the defendant is clearly entitled to immunity would certainly fall within this category. Immediate appeal would lie from these orders . . . .

On the other hand, a discovery order is not immediately appealable

> when the defendant's immunity claim turns at least partially on a factual question; when the district court is unable to rule on the immunity defense without further clarification of the facts; and which are narrowly tailored to uncover only those facts needed to rule on the immunity claim are neither avoidable or overly broad.

Id. at 282–83 (quoting Lion Boulos, 834 F.2d at 507–08). Immediate review of discovery orders before a district court rules on qualified immunity serves to protect government officials asserting immunity "from the costs associated with trial [as well as] the other burdens of litigation, which include the burdens of broad reaching discovery." Lewis, 903 F.2d at 754 (quotations omitted).

**B**

In his motion for summary judgment, Stratman argued that Garrett's medical need was not "sufficiently serious" because in his judgment, the injury

-14-

"should be given time to heal naturally" (Appellant's App. at 38), that Garrett "failed to show that Defendant Stratman had the required culpable state of mind" (id. at 39), and that Garrett's "allegations are lacking any evidence of 'substantial harm' caused by the alleged delay" ( id. at 41).  Stratman objected to the magistrate judge's recommendation on the bases that Garrett "failed to show Dr. Stratman acted intentionally or with deliberate indifference when he allegedly failed to provide adequate treatment to plaintiff" ( id. at 160) and that Garrett "has not come forward with any admissible evidence that tends to prove that he suffered 'substantial harm' from the alleged delay in surgery" ( id. at 158).

The district court concluded that a genuine issue of material fact existed as to whether Stratman acted with deliberate indifference:

> The fact that the surgery took place 11 months after the injury raises, at a minimum, a dispute regarding the intent of defendant Stratman. Defendant Stratman states that he has no control over when the approval of the transfer to the Missouri facility is authorized.  If this was a dispute as to a matter of a couple of weeks this Court would agree, but 11 months is different.  A delay of 11 months could be deliberate indifference.  Dr. Stratman could have done something to speed up the transfer process.  A trier of fact can properly evaluate whether this failure to act by defendant Stratman constitutes deliberate indifference.

(Id. at 169.) [10]  Also in genuine dispute, concluded the district court, was the

---

[10]  In his recommendation, the magistrate judge stated, "A review of the record indicates that a genuine issue of material fact exists concerning whether Stratman acted with deliberate indifference toward Plaintiff by not seeking more

(continued...)

-15-

existence of substantial harm: "Plaintiff has alleged permanent injury to his arm and shoulder, and this alleged injury satisfies the 'substantial harm' requirement." ( Id. at 168.)

The first two issues raised on appeal—whether the district court erred in denying summary judgment on the grounds that Garrett "did not allege, or submit any evidence, that Stratman was responsible for the delay in his transfer" and that Garrett "failed to submit any evidence that the delay in surgery caused any harm"—strike us as precisely the kind of "evidence sufficiency" issues we must decline to address at this juncture. Our review of the district court's order confirms this impression.

Stratman claims that he may immediately appeal the district court's denial of summary judgment "because the district court cited no record evidence supporting its conclusions that (1) Garrett suffered substantial injury or, (2) there is a dispute regarding the intent of defendant Stratman and that Dr. Stratman could have done something to speed up the transfer process." (Appellant's Br. at 4–5 (internal quotations omitted).) Contrary to Stratman's contention, the district court points to specific facts—Garrett's shoulder injury [11] and the eleven-month

[10](...continued)
expediation and qualified medical attention for the Plaintiff." (Appellant's App. at 151.)

[11] ( Id. at 50–52 (Stratman affidavit);  id. at 53–107 (Garrett's medical
                                                                (continued...)

delay [12]—regarding Garrett's substantial injury and Stratman's intent. In addition, the district court could have referenced Stratman's knowledge of the following to show deliberate indifference: Garrett's ongoing pain, [13] Dr. Jere Sutton's recommendation for reconstructive surgery, [14] the surgical referral request prepared by Stratman in which he indicated that "travel should be within two weeks and/or condition warrants direct transfer," [15] and the delay in transfer. [16] The court could have relied on the same evidence to find a genuine issue of fact regarding substantial harm.

With respect to its conclusion regarding Stratman's personal participation—whether he could have done something to speed up the transfer

---

[11](...continued)
records, submitted with Stratman's motion for summary judgment).)

[12] ( Id. at 51–52 (Stratman affidavit).)

[13] ( Id. at 53–90 (Garrett's medical records from June 14, 1995 to April 30, 1996, a large number of which were reviewed and initialed contemporaneously by Stratman); id. at 99 (consultation sheet, in which Stratman notes that the shoulder injury "caus[ed] pain with arm motion or cuffing in the rear"); id. at 99 (consultation sheet, in which the orthopedic consultant observes that Garrett "has difficulty in range of motion and pain because of the condition").

[14] ( Id. at 99.)

[15] ( Id. at 100 (Medical/Surgical and Psychiatric Referral Request prepared by Stratman and approved by the warden).)

[16] ( Id. at 52 (Stratman affidavit, in which he attests, "Between late August 1995 and May 9, 1996, I responded to both verbal and written inquiries from inmate Garrett about the recommended surgical repair of his left shoulder.").)

process—the district court may have relied on Stratman's own affidavit, in which he attested that he was the Clinical Director at ADX; that he saw Garrett on "numerous occasions for various medical complaints," including the shoulder injury; and that although he could not unilaterally order an immediate transfer, he was empowered to recommend transfer to a medical center for treatment. [17] Having concluded that "[t]he district court could . . . have identified disputed facts concerning" what Stratman could have done to hasten the transfer, we are without jurisdiction to delve further into the record to "assess[] . . . the district court's evidentiary conclusions." Gross, 245 F.3d at 1157–58.

Stratman attempts to secure jurisdiction by stating that "[s]ince Garrett did not allege that Dr. Stratman had any authority to effectuate his transfer, or submit any evidence in that regard, under Garrett's version of the facts, Dr. Stratman did not violate clearly established law." (Appellant's Br. at 4 (quotation omitted).) It is true that "[a] district court's denial of a defendant's summary judgment motion based on qualified immunity is an immediately appealable 'collateral order' when the issue appealed concerns whether certain facts demonstrate a violation of clearly established law." Gross, 245 F.3d at 1156. Stratman did not make this argument in his initial motion for summary judgment, and in his objections to the magistrate judge's recommendation his argument was merely an

---

[17] (Id. at 51.)

evidentiary one—that there was no question of fact as to whether he "did anything to interfere with or hinder plaintiff's treatment." (Appellant's App. at 160.)[18] The district court took a different view of the matter, concluding that there was a genuine issue of fact as to whether Stratman "could have done something to speed up the transfer process," notwithstanding evidence that he could not have unilaterally ordered an immediate transfer. (Id. at 169.) As we have decided above, this conclusion could have been supported by evidence in

---

[18] Stratman's objection regarding his lack of authority, quoted in total below, resounded of an unreviewable "I didn't do it" issue.

> Moreover, absolutely nothing in the record suggests that Dr. Stratman did anything to interfere with or hinder plaintiff's treatment. Furthermore, Dr. Stratman cannot be held responsible for the delay in transferring plaintiff for surgery as he states in his declaration that he did not have the authority to order the transfer immediately or to order that the surgery be performed locally. In his declaration, Dr. Stratman states that the Medical Designator is responsible for determining when an inmate is transferred to Springfield, Missouri, for treatment (¶ 8) ( See also Declaration of George Klingner, M.D., ¶ 5). In fact, the Medical Designation and Transportation Office specifically ordered the plaintiff not to be transferred until it specifically authorized it. ( See Exhibit G to Defendants' Motion to Dismiss) (Neither does plaintiff suggest that Dr. Stratman should have provided any different treatment in the interim before surgery.) Plaintiff has not offered any evidence to suggest that Dr. Stratman was involved in or had any input as to when the surgery should be performed, or when the transfer should occur. Plaintiff bears the burden of showing that Dr. Stratman should have done more, and plaintiff has failed to do so.

(Id. at 160–61.)

-19-

the record, and we are without jurisdiction to scrutinize the district court's

conclusion beyond taking that quick look.

At no time during the district court proceedings did Stratman argue that it

was not clearly established that a prison official who could recommend, but not

order, a specific action could violate an inmate's Eighth Amendment rights. The

issue was not raised or addressed below, and we will not consider it on appeal.[19]

Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992); see

Behrens, 516 U.S. at 313.

## C

Stratman challenges the district court's decision to permit discovery,

ostensibly under Federal Rule of Civil Procedure 56(f). Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion
> that the party cannot for reasons stated present by affidavit facts
> essential to justify the party's opposition, the court may refuse the
> application for judgment or may order a continuance to permit
> affidavits to be obtained or depositions to be taken or discovery to

---

[19] Although the section of Stratman's brief entitled "This Court's Jurisdiction," characterizes the appeal as one involving an abstract question of law (Appellant's Br. at 4), this characterization is betrayed by the remainder of the brief, which focuses on evidence sufficiency and the discovery matter discussed below. Stratman himself summarizes the argument in this fashion: "Garrett Failed to Meet His Burden of Submitting Evidence Creating a Genuine Issue of Material Fact Regarding Dr. Stratman's Defense of Qualified Immunity." (Id. at 21.)

We decline appellant's invitation, implicit in the jurisdictional portion of his brief, that we contort his arguments to create appellate jurisdiction at this stage in the litigation.

be had or may make such other order as is just.

On appeal, Stratman argues that the affidavit submitted by Garrett's attorney was insufficient to establish a need for additional discovery. [20] Had the district court refused or continued the application for summary judgment under Rule 56(f), its decision to permit discovery would be immediately appealable. Lewis, 903 F.2d at 758–59. The district court decided as an initial matter, however, to deny summary judgment on qualified immunity because genuine issues of fact existed regarding intent, personal participation, and Garrett's injury. As a result, the policy supporting immediate appeals over discovery orders in the qualified immunity context—to spare government officials burdensome litigation prior to the district court's resolution of qualified immunity—is not implicated, and the discovery order is not necessarily immediately appealable. See Maxey, 890 F.2d at 282 (holding that "immediate appeal would lie" for certain discovery orders "before a ruling on the immunity defense") (quotation omitted).

We therefore look to see if Stratman's discovery challenge meets the requirements for appeal under the collateral order doctrine. As stated above, a collateral order may be immediately appealable under 28 U.S.C. § 1291 if it

---

[20] "[I]n response to a summary judgment motion based on qualified immunity, a plaintiff's 56(f) affidavit must demonstrate how discovery will enable them to rebut a defendant's [evidence]." Lewis, 903 F.2d at 758 (quotation omitted).

(1) conclusively determines the disputed question, (2) resolves an important issue separate from the action's merits, and (3) is effectively unreviewable on appeal from a final judgment.  Because Stratman gives no reason why his appeal of the district court's discovery order meets these requirements, we do not exercise jurisdiction over it.    See Stringfellow v. Concerned Neighbors in Action    , 480 U.S. 370, 375 (1987) (stating that "a party seeking appeal must show that all three requirements are satisfied);    In re Simons  , 908 F.2d 643, 645 (10th Cir. 1990) (same) (quoting    In re Magic Circle Energy Corp.   , 889 F.2d 950, 954 (10th Cir. 1989)).

## III

The appeal is    **DISMISSED** .

**00-1028, Garrett v. Stratman**
**TACHA, Chief Judge, dissenting**

I respectfully dissent. I have searched the record for genuine issues of material fact relevant to finding that Dr. Stratman was deliberately indifferent to Mr. Garrett's admittedly serious medical need. I find none. Although a delay in the provision of medical care may violate the Eighth Amendment, Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999), the delay must be more than a matter of medical judgment and it must be causally connected to the defendant's conduct. The record instead shows that Mr. Stratman pursued an ongoing course of treatment and medication that eventually anticipated surgical treatment. Regular notations in Mr. Garrett's medical records describe various treatments, consultations, and prescriptions directed at treating and relieving the shoulder injury. After submitting the surgical referral request, Dr. Stratman documented the need for surgery and the impending surgical transfer in nearly every notation. Nothing in the record even circumstantially suggests that Dr. Stratman is responsible for any deliberate delay in the surgical treatment.

Mr. Garrett disagrees with Dr. Stratman's decision to wait seven weeks before referring him to an orthopedic specialist, but this delay is clearly a result of Dr. Stratman's medical judgment. Mr. Garrett's mere disagreement with his doctor regarding the early weeks of his treatment does not constitute deliberate indifference. See Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[A] difference of opinion does not support a claim of cruel and unusual

punishment."). The Supreme Court has characterized deliberate indifference as a "stringent standard of fault," <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997), and has cautioned that a defendant's conduct must be more than negligent to constitute cruel and unusual punishment under the Eighth Amendment: "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). The delay between the initial consultation with Dr. Stratman on June 22, 1995 and the referral to the orthopedic specialist, Dr. Sutton, on August 10, 1995 is fully explained by the undisputed statement of Dr. Stratman: "In my medical judgment, this type of injury should be given time to heal naturally. If that does not occur within six to eight weeks, a referral to a consultant orthopedic specialist is in order." Dr. Stratman's referral to Dr. Sutton was entirely consistent with this statement and nothing in the record contradicts his medical judgment.

Furthermore, less than two weeks after Dr. Sutton recommended surgery, Dr. Stratman submitted a surgical referral request. Dr. Sutton examined Mr. Garrett on August 25, 1995, and on September 5, 1995, Dr. Stratman completed a referral form, recommending that Mr. Garrett be transferred for orthopedic surgery. The eleven days between the orthopedic consultation and the surgical referral cannot, by any reasonable standard, be deliberate indifference. <u>See</u>

-2-

Olson, 9 F.3d at 1477 (holding prison officials were not deliberately indifferent in waiting eighteen months before providing plaintiff with a specialist and surgery when plaintiff received different, but appropriate, medical treatment prior to surgery).

The majority persists in pointing to an eleven-month delay between Mr. Garrett's injury and his surgery. But this overstates the delay for which Dr. Stratman is even arguably responsible because, as discussed above, the ten to eleven weeks between Mr. Garrett's initial visit and submission of the surgical referral request were a result of Dr. Stratman's medical judgment and cannot be characterized as a delay. The remaining eight months between submission of the surgical referral request and the actual transfer are irrelevant because Dr. Stratman's conduct is not the legal or proximate cause of the eight-month delay and therefore not the cause of the harm that Mr. Garrett claims resulted from the delay.

Causation is a necessary element of a § 1983 claim of deliberate indifference. Daniels v. Gilbreath, 668 F.2d 477, 488 (10th Cir. 1982). Beyond September 5, 1995, the record contains no facts supporting the barest inference that Dr. Stratman had any power or authority to expedite Mr. Garrett's transfer. To the contrary, in his affidavit, Dr. Stratman clearly stated that he had no authority to order an immediate transfer or even to have the surgery done locally.

-3-

Nothing in the record disputes this statement.  Instead, the record indicates that all orders related to the actual transfer came from the "Medical Designations and Transportation, Central Office" (MDTO) in the Bureau of Prisons' Central Office in Washington, DC.  In fact, the memorandum from the MDTO approving the surgical referral request explicitly prohibited Mr. Garrett's actual transfer until authorized by the MDTO.  [1]

In short, by any summary judgment standard, see e.g., Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998) (allowing the nonmovant "wide berth to prove a factual controversy exists" (internal quotation marks omitted)), the record contains no facts that even inferentially tie Dr. Stratman to any delay in treatment other than a seven-week delay based on his medical judgment and an eleven-day delay in completing a referral form.  In all respects, the facts describing Dr. Stratman's care of Mr. Garrett are consistent with an attentive physician, aware of and treating a serious medical condition and awaiting a transfer for surgery.

---

[1] In addition, Dr. Stratman's designation of the transfer as "Routine – Urgent" in the surgical referral request does not support even an inference that Dr. Stratman caused the eight-month delay.  The fact that Dr. Stratman checked the option recommending "travel . . . within two weeks and/or condition warrants direct transfer" does not support the conclusion that Dr. Stratman had authority to order such a transfer.  It merely indicates Dr. Stratman used the authority he had to secure Mr. Garrett's timely transfer.  Although the form does provide an emergency option, which indicates that time and mode of travel are critical, Dr. Stratman exercised his medical judgment in prioritizing the urgency of the transfer.  Nowhere in the record is that judgment refuted.

Because nothing in the record supports a finding of deliberate indifference in this case, I disagree with the majority's decision to dismiss for lack of jurisdiction.