BALDOCK, J., Circuit Judge,
dissenting in part.
Today a two-judge majority sweeps away twenty-five years of binding precedent as “dicta” and effectively relieves a prisoner claiming deliberate indifference to her medical needs of the burden of satisfying the objective prong of the deliberate indifference test, i.e., the burden of showing the deprivation of a medical need “ ‘so obvious that even a lay person ivould easily recognize the necessity for a doctor’s attention.’ ” Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (emphasis added) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.1980)); accord Olsen v. Layton Hills Mall, 312 F.3d 1304, 1315 (10th Cir.2002); Garrett v. Stratman, 254 F.3d 946, 949 (10th Cir.2001); Oxendine v. *764 Kaplan, 241 F.3d 1272, 1276 (10th Cir.2001); Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir.2000). According to the panel, with nary a citation to authority:
When delay by prison employees results in damage to a prisoner’s heart, the question raised by the objective prong of the deliberate indifference test is whether the alleged harm (such as heart damage) is sufficiently serious (which it undoubtedly is), rather than whether the symptoms displayed to the prison employee are sufficiently serious (as argued by Judge Baldock).
Court’s Op. at 753 (emphasis added).
By relying on hindsight rather than focusing on a prisoner’s condition as it would appear to a lay person at the time medical assistance was sought, the panel eliminates the objective prong from the deliberate indifference test. Harm is a precursor to every deliberate indifference claim worth its weight. Indifference does not relate to how a situation might have been handled differently in hindsight. At the outset, indifference relates to a prisoner’s situation at a particular point in time and what measures, if any, are warranted to address that situation. Under the panel’s view of the law, a prisoner who complains of a headache, receives aspirin, and later has a brain aneurism has satisfied the objective prong of the deliberate indifference test. That cannot be the law. Because this panel has expanded our Eighth Amendment jurisprudence well beyond its narrowly defined scope, I dissent.
I.
To satisfy the objective prong of the Eighth Amendment’s deliberate indifference test, the law requires a prisoner to demonstrate that prison officials failed to address a “sufficiently serious medical need.” See, e.g., Hunt, 199 F.3d at 1224. Consistent with heightened standards for constitutional liability, the need must be obvious. We have repeatedly defined a sufficiently serious medical need as one so obvious that even a lay person would easily recognize the necessity for a doctor’s attention. See supra at 1. In other words, the test’s objective prong asks whether a lay person would have recognized a prisoner’s medical need as sufficiently serious based upon the circumstances presented to the prison official. See, e.g., Olsen, 312 F.3d at 1316 (addressing whether a panic attack was sufficiently serious to warrant medical attention); Oxendine, 241 F.3d at 1278 (addressing whether “blackening and nec-rifying tissue” of reattached finger was sufficiently serious to warrant medical attention). Only if the answer to that inquiry is yes do we inquire into the prison official’s state of mind.
The subjective prong of the deliberate indifference test asks whether the prison official consciously disregarded a substantial risk of harm to the prisoner. See Farmer v. Brennan, 511 U.S. 825, 837-39, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Only if the prisoner satisfies both prongs of the test, and the official’s inaction results in substantial harm to the prisoner, does such inaction constitute the infliction of cruel and unusual punishment redressa-ble under the Eighth Amendment. We explained this settled state of the law in Oxendine:
[T]o properly set forth an Eighth Amendment claim ... [the prisoner] must set forth facts demonstrating [1] that his alleged medical need, in this case the need for an outside medical specialist, was sufficiently serious to meet the objective element of the deliberate indifference test, and [2] that the Defendants’ delay in meeting that need caused him substantial harm. Finally, to meet the subjective element of the deliberate indifference test, [the prison *765 er] must [set forth] facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.
241 F.3d at 1276-77 (emphasis added).
II.
After today, I am at best uncertain as to the state of the law in this Circuit. That portion of the panel’s opinion quoted above from page twelve plainly states a prisoner need only show a delay in medical care caused substantial harm to meet the objective prong of the deliberate indifference test. Yet, after concluding a prisoner’s symptoms have no bearing upon the objective prong of the test (it’s the harm that counts), the panel retreats and goes to great lengths to conclude Ms. Mata’s complaint of chest pains alone established a sufficiently serious medical need under the test’s objective prong. See Court’s Op. at 754-55. The panel appears in a quandary. For just as I can find no prior case which holds harm alone may satisfy the objective prong of the deliberate indifference test, I can find no prior case which holds chest pain alone satisfies the objective prong of the test.
The Court’s reliance upon our decision in Sealock, 218 F.3d at 1205, to support the latter proposition is misguided. In Seal-ock, an opinion in which I joined, the prisoner exhibited symptoms far beyond chest pain. Not only was the prisoner experiencing severe chest pains, but “[h]e was sweating so heavily that his bed and clothing were soaked.” Id. at 1207. Prison officials “observed that [the prisoner] was sweating, vomiting, and appeared very pale.” Id. at 1208. The prisoner told officials “he had a crushing pain in his chest, he had trouble breathing, and had been vomiting all night.” Id. After several hours, the prisoner finally was taken to the infirmary where he complained of chest pain, throat pain, nausea, vomiting, and breathing difficulties. Id. Based on those facts we held the prisoner satisfied the objective prong of the deliberate indifference test by showing his medical needs were so obvious that even a lay person would have easily recognized the need for a doctor. Id. at 1210.
Of course, the symptoms Ms. Mata exhibited to Nurse Weldon in this case were far fewer and less severe than those exhibited to officials in Sealock. In fact, Ms. Mata complained of a single symptom to Nurse Weldon—chest pain. Unlike the prisoner in Sealock, absolutely nothing in the record suggests Ms. Mata was suffering from any symptom other than chest pain when she visited Nurse Weldon on the evening of October 29, 2000. The record suggests Ms. Mata simply left the infirmary after Ms. Weldon told her it was closed. Ms. Mata left without objection, did not insist she be evaluated, and did not complain of chest pains to anyone else that night. In fact, Ms. Mata stated that after she left the infirmary, she went back to her bed and just “laid there.” Ms. Mata’s complaints of chest pain, without more, would not have indicated a serious cardiac problem that was obvious to a reasonable lay person.
This is because, more often than not, chest pains are not indicative of a serious cardiac problem. See Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir.1999) (noting a “lay person” would not consider complaints of “chest pains” serious enough to require a doctor’s care or attention because such complaints, “objectively speaking, are relatively minor”). For example, the American Medical Association broadly describes the term “chest pain” as any “pain that occurs in the area between the neck and the bottom of the rib cage.” American Medical Association’s Complete Medical Encyclopedia 24 (2003). An as *766 sortment of maladies might be the source of “chest pain,” including asthma, stomach ulcers, gastroesophageal reflux disease, anxiety or pneumonia. Id. at 348-49. Chest pain may also originate from a host of organs including the heart, lungs, esophagus, muscles, ribs, tendons, or nerves. Id.
Simply stated, “not all chest pain signals a heart attack, nor does every heart attack cause chest pain.” Id. at 349. In his deposition, Dr. Jack Boerner stated “there are many cases of chest pain that have other apparent causes that wouldn’t require immediate evaluation looking for a heart attack.” Dr. Boerner also stated “I don’t want to say that all patients ... who have chest pain, require a physician’s evaluation. Because I think that there are a large number of patients who have clearly non-cardiac cause for the pain.” Under a proper view of the law, Ms. Mata has not shown she suffered from a sufficiently serious medical need on the night of October 29, 2000 that was so obvious even a lay person would have easily recognized the necessity for a doctor’s attention.
Ill
Just as Ms. Mata failed to present evidence of a sufficiently serious medical need under the objective prong of the deliberate indifference test, she failed under the subjective prong of the test to present evidence showing Nurse Weldon was subjectively aware of and disregarded a substantial risk of serious harm to her. The panel extensively relies on the Colorado Department of Correction’s Clinical Standards and Procedures for Health Care Providers (“Protocols”) to infer Nurse Weldon knew she was required to perform an EKG on Ms. Mata and summon a doctor when Ms. Mata complained of chest pain. According to the panel, the Protocols required Ms. Weldon, as a medical “gatekeeper,” to notify either a physician, physician assistant, or nurse practitioner of Ms. Mata’s chest pain. To the contrary, the Protocols do not require an EKG and doctor in every instance of chest pain. The Protocols only require that “patients presenting for evaluation of chest pain or other symptoms possibly representing myocardial ischemia” will have an EKG performed and will be evaluated by a provider (emphasis added).
Myocardial ischemia is a heart attack caused by the blockage of a coronary artery. Stedman’s Medical Dictionary 895 (27th ed.2000). Symptoms possibly representing myocardial ischemia include “crushing anterior chest pain radiating into the neck, shoulder, or arm, lasting more than 30 minutes.” Id. “[Tjypically pain is accompanied by dyspnea, diaphore-sis, weakness, and nausea.” Id. In this case, Ms. Mata’s complaint to Nurse Weldon was limited to chest pain. Ms. Mata did not complain of any pain in her neck, shoulder, or arms; nor did she complain of any nausea or breathing difficulties. Nurse Weldon simply was not presented with chest pain possibly representing myocardial ischemia. In fact, the evidence shows Ms. Mata did not experience any myocardial ischemia until sometime between the morning of October 30, 2000, and the morning of October 31, 2000, well after her initial visit with Nurse Weldon.
Even assuming the Protocols required an EKG and doctor in every instance of chest pain (which they do not), absolutely nothing in the record suggests Ms. Weldon was consciously aware of the Protocols and violated them.[1] “[A]n official’s failure to *767 alleviate a significant risk that [s]he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.” Farmer, 511 U.S. at 838, 114 S.Ct. 1970 (emphasis added). The panel relies on the negative inference that “Ms. Weldon does not contend she was unaware severe chest pain is a cardiac symptom or a serious medical condition.” Court’s Op. at 22. The panel’s inference, however, inverts the proper burden of proof for qualified immunity purposes. Ms. Mata bears the burden to show Nurse Weldon violated her constitutional rights. See Nelson v. McMullen, 207 F.3d 1202, 1206 (10th Cir.2000) (noting once a defendant raises a qualified immunity defense, “the burden shifts to the plaintiff to meet a strict two-part test.”). Ms. Mata fails to satisfy her burden because she has not shown Nurse Weldon knew of a substantial risk of harm and deliberately disregarded that risk.
I would affirm the judgment of the district court in all respects and specifically as to Nurse Weldon.

. The panel’s attempt to analogize Nurse Weldon's inaction with that of the physician assistant in Sealock is misplaced. The physician assistant in Sealock acknowledged he was ob *767 ligated to call an ambulance and procure treatment for the patient if the patient was experiencing unexplained chest pain. We concluded that "[i]f Havens did know about the chest pain, by his own testimony, he may have been deliberately indifferent in failing to summon an ambulance.” Sealock, 218 F.3d at 1211 (emphasis added). The physician assistant's statement was relevant for purposes of the subjective prong because it provided direct insight into his state of mind. In contrast, nothing suggests Nurse Weldon understood that chest pain alone required her to summon help.