**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LESLIE WEISE; ALEX YOUNG,

      Plaintiffs - Appellees,

v.

MICHAEL CASPER, in his individual capacity,

      Defendant - Appellant,

          and

JAY BOB KLINKERMAN, in his individual capacity; JOHN/JANE DOES 1-5, all in their individual capacities,

      Defendants.

No. 06-1504 and 06-1516

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 05-CV-2355-WYD-CBS)**

---

Sean R. Gallagher (and Dugan Bliss, Hogan & Hartson, L.L.P. (for Defendant - Appellant Michael Casper) and Brett R. Lilly and John S. Zakhem, Doyle, Zakhem, Suhre & Lilly, L.L.C., (for Defendant - Appellant Jay Bob Klinkerman), with him on the briefs), Denver, Colorado.

Christopher A. Hansen (and Catherine Crump, American Civil Liberties Union, New York, New York, Martha M. Tierney and Jerremy M. Ramp, Kelly, Haglund, Garnsey, Kahn, L.L.C., Denver, Colorado, and Mark Silverstein, American Civil

Liberties Union of Colorado, Denver, Colorado, on the brief), for Plaintiffs - Appellees.

---

Before **KELLY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendants-Appellants Michael Casper and Jay Bob Klinkerman (collectively "Defendants") appeal the district court's denial, without prejudice, of their Fed. R. Civ. P. 12(b)(6) motions to dismiss based on qualified immunity. As the district court ruled only that the evidentiary record was insufficient to rule on the merits of Defendants' motions, we grant Plaintiffs-Appellees' motion to dismiss this appeal for lack of appellate jurisdiction.

Background

Plaintiffs-Appellees Leslie Weise and Alex Young (collectively "Plaintiffs") brought an action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that Defendants and five others, acting under color of law and pursuant to White House policy, violated their First and Fourth Amendment rights by ejecting them from a public appearance by President George W. Bush. Plaintiffs contend that they were

ejected because a bumper sticker on their car expressed a viewpoint contrary to that of the President's.

According to the complaint, on March 21, 2005, the President delivered a speech on Social Security at the Wings Over the Rockies Air and Space Museum, in Denver, Colorado. See Complaint ¶ 9.[1] The White House set the policies and procedures as to who could attend the President's speech, and tickets were made available to the public. See id. at ¶¶ 10-12. The White House also solicited the assistance of staff and volunteers, including Defendants, to carry out its attendance policies at the event. See id. at ¶¶ 11-12; Aplt. Br. at 4.

Plaintiffs obtained tickets to the event and arrived at the event in a vehicle, owned and driven by Plaintiff Weise, which had a bumper sticker that read "No More Blood For Oil." See id. at ¶¶ 13, 15-16. After parking, Plaintiffs approached security. See id. at ¶¶ 17, 19. While Plaintiff Young was permitted to enter, Plaintiff Weise was directed to wait with Defendant Klinkerman, who identified himself as a "volunteer" from Colorado, and told Plaintiff Weise that the Secret Service wanted to speak with her. See id. at ¶¶ 19, 21. Soon thereafter, Defendant Casper, who wore a dark blue suit, earpiece and lapel pin approached and Defendant Klinkerman said, "that's him" or "here he comes." Id. at ¶ 22. Defendant Casper told Plaintiff Weise that "she had been 'ID'd', and that

---

[1] The Complaint can be found at pages 12-20 of Appellants' Appendix.

if she had any ill intentions" or "tried any 'funny stuff' [she] would be arrested, but that he was going to let [her] in." Id. at ¶ 23.

Shortly thereafter, Defendant Casper consulted with one or more of the unnamed defendants and was advised that one or more of them had, at the direction of a White House official, set a policy prohibiting anyone from attending the event if they held a viewpoint contrary to that held by the President. See id. at ¶ 25. A few minutes later, Defendant Casper approached Plaintiffs, who had reached their seats, and directed them to leave the event. See id. at ¶ 27. Plaintiffs were escorted out of the event and not allowed to reenter. See id. at ¶¶ 27-30. After the event, Secret Service confirmed that Plaintiffs were ejected because of the bumper sticker on their vehicle. See id. at ¶ 32. Plaintiffs claim they had no intention of disrupting the event, but if given the opportunity, one of them would have asked the President a question. See id. at ¶ 18.

Plaintiffs brought a Bivens action against Defendants in their individual capacities, alleging that Defendants acted under "color of federal law" and that "[a]t all times, the policies concerning attendance at the event were set by federal officials acting as federal officials, including some of the Doe defendants," and that "Defendants Klinkerman and Casper ejected the plaintiffs at the direction of and pursuant to policies of those federal officials." Id. at ¶¶ 33, 36. Plaintiffs further allege that Defendants "conspired" with and "acted in concert with the

Doe defendants who directed the ejection and who established the policies that were being enforced by the ejection." Id. at ¶ 34.

Each Defendant filed a motion to dismiss the action on qualified immunity grounds. See Aplt. Br. at 2-3. In addition, both sought a protective order prohibiting all discovery until the issue of qualified immunity was resolved. See Motion to Dismiss for Lack of Appellate Jurisdiction of Plaintiffs-Appellees Leslie Wiese and Alex Young, Nov. 30, 2006, at 3. In response, Plaintiffs requested discovery on the issue of whether Defendants were entitled to qualified immunity as private parties alleged to have been acting under color of law. See id. The magistrate granted Defendants' motions for a protective order and stayed all discovery until the pending motions to dismiss based on qualified immunity were decided. See id.

The district court denied Defendants' motions to dismiss, without prejudice. See Weise v. Casper, No. 05-02355, 2006 WL 3093133, at *4 (D. Colo. October, 30, 2006). Although the district court found that Plaintiffs sufficiently alleged federal action to support their Bivens claim, it was unclear to the district court whether Defendants could assert a qualified immunity defense. Relying on Richardson v. McKnight, 521 U.S. 399 (1997), the district court explained that because Defendants were private parties, they were entitled to assert a qualified immunity defense only if they were acting as federal officials or as private parties at the direction and close supervision of federal officials. See

Weise, 2006 WL 3093133, at *4 (citing Richardson, 521 U.S. at 413; Rosewood v. Sunflower Diversified Servs., Inc., 413 F.3d 1163, 1167 (10th Cir. 2005)). The district court noted that Plaintiffs requested discovery on this "threshold issue," that Defendants did not address it in their moving papers, and thus the district court found the record to be insufficient for it to rule on the merits of the motions. See id. at *2-*4. Accordingly, the district court ordered that Plaintiffs would be allowed limited discovery on the issue of "Defendants' status at the time of the conduct at issue, whether Defendants were 'closely supervised' by government officials, and whether Defendants are entitled to assert [a] qualified immunity [defense] . . . ." Id. at *4.[2] This appeal followed.

## Discussion

Under the Supreme Court's collateral order doctrine, Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949), "a district court's denial of a claim

---

[2] Following the district court's ruling, we allowed Plaintiffs to take depositions of Casper and Klinkerman for the limited purpose of identifying other potential defendants so Plaintiffs could file claims against them within the relevant statute of limitations. See Order, Feb. 15, 2007. As a result of information obtained during those depositions, Plaintiffs now agree that Defendants were closely supervised by public officials and are entitled to assert qualified immunity. See Aplee. Br. at 7-8. However, Plaintiffs' concession cannot confer appellate jurisdiction on this court. See Garrett v. Stratman, 254 F.3d 946, 951 (10th Cir. 2001) (even if a party concedes it, "we have a 'special obligation to satisfy' ourselves of appellate jurisdiction" (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986))). We still must examine whether the district court's order is one where an interlocutory appeal would lie.

of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Accordingly, the Supreme Court has limited appeals of interlocutory decisions denying the defense of qualified immunity "to cases presenting neat abstract issues of law." Johnson v. Jones, 515 U.S. 304, 317 (1995) (internal quotation omitted); see also Behrens v. Pelletier, 516 U.S. 299, 313 (1996). In contrast, pretrial determinations of evidentiary sufficiency in qualified immunity cases are not immediately appealable. See Behrens, 516 U.S. at 313; Jones, 515 U.S. at 314-18. The Supreme Court has provided two rationales to support this distinction. First, evidentiary sufficiency determinations are not separable from a plaintiff's claim and thus do not constitute final decisions under Cohen and Mitchell. See Behrens, 516 U.S. at 313; Jones, 515 U.S. at 314-15. Second, "considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law." Jones, 515 U.S. at 317. These principles apply to interlocutory appeals at either the dismissal or summary judgment stage of a litigation. See Behrens, 516 U.S. at 306-07.

Notwithstanding these principles, Defendants argue that we have appellate jurisdiction over their appeal. We disagree. First, they argue that there can be no

- 7 -

factual dispute on a Fed. R. Civ. P. 12(b)(6) motion to dismiss and that the complaint on its face establishes they are entitled to assert qualified immunity. See Defendant-Appellant's Response to Motion to Dismiss for Lack of Appellate Jurisdiction of Plaintiff-Appellees Leslie Weise and Alex Young, Dec. 15, 2006 ("Defendants-Appellants' Response"), at 2-6; Aplt. Br. at 9-12; Reply Br. at 2-4. However, it is well-established that denials of qualified immunity based on a motion to dismiss are only immediately appealable to the extent they turn on issues of law. See Prager v. LaFaver, 180 F.3d 1185, 1190 (10th Cir. 1999). If a district court cannot rule on the merits of a qualified immunity defense at the dismissal stage because the allegations in the pleadings are insufficient as to some factual matter, the district court's determination is not immediately appealable. United States v. Yonkers Bd. of Educ., 893 F.2d 498, 502-03 (2d Cir. 1990) (denial of motion to dismiss on grounds of immunity not appealable where applicability of immunity cannot be decided from the face of the pleadings and requires discovery); Lawson v. Abrams, 863 F.2d 260, 262-63 (2d Cir. 1988) (same); see also Almonte v. City of Long Beach, 478 F.3d 100, 110 (2d Cir. 2007).

Second, Defendants argue that the district court should have first analyzed the purely legal issue of whether a constitutional violation occurred based on the facts contained in the complaint and, if so, whether the constitutional right alleged to have been violated was clearly established. See Defendants-

Appellants' Response at 6-9; Aplt. Br. at 8-9; Reply Br. at 2-3. While this would be the ordinary course, see Siegert v. Gilley, 500 U.S. 226, 229-33 (1991), this analysis can only proceed after the court determines that a defendant is entitled to assert qualified immunity in the first instance. See id. at 231 ("Qualified immunity is a defense that must be pleaded by a defendant official"); Wyatt v. Cole, 504 U.S. 158, 168 (1992) (private parties who conspire with public officials to violate constitutional rights are not automatically immune from suit). The district court recognized that Defendants are not public officials and decided more inquiry was necessary before engaging in any further aspect of qualified immunity analysis. The district court did not abuse its discretion in ordering limited discovery given its concerns.

Third, Defendants rely on Behrens, 516 U.S. at 305-14, in arguing that the district court's discovery order forces them to renew their defense on summary judgment, thus depriving them of their right to dispose of the case at the dismissal stage. See Defendant-Appellants' Response at 6. Behrens does not provide that Defendants are automatically entitled to appeal both the denial of a motion to dismiss and a motion for summary judgment. Rather Behrens rejects the "one-interlocutory-appeal" approach and clarifies that the denial of qualified immunity at the dismissal stage does not preclude a renewal of that defense at summary judgment after further factual development has occurred. Behrens, 516 U.S. at 305-11; see also Walker v. City of Orem, 451 F.3d 1139, 1146 n.5 (10th Cir.

- 9 -

2006). Further, it is well established that limited discovery may be necessary to resolve qualified immunity claims on summary judgment. See Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987) (explaining that although qualified immunity should be resolved at the earliest possible stage of litigation, "tailored" discovery may be necessary to resolve factual questions before disposing of the case on summary judgment).

Finally, Defendants argue that some of our sister circuits have exercised appellate jurisdiction in analogous cases. See Defendants-Appellants' Response at 6-9. We disagree as each of the cases relied upon by Defendants are distinguishable from this case. Defendants principally rely on the Second Circuit's holdings in Locurto v. Safir, 264 F.3d 154, 164-65 (2d Cir. 2001) and X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999) and the Fourth Circuit's holding in McVey v. Stacy, 157 F.3d 271, 275-76 (4th Cir. 1998). These cases hold that when a district court denies a qualified immunity motion on the ground that a factual question exists as to whether the defendant's conduct violated a constitutional right, that denial is reviewable by the court of appeals because the district court's denial constitutes at least an implicit legal decision that the complaint alleges a constitutional claim on which relief can be granted, and that the constitutional right alleged to have been violated was clearly established at the time of defendant's conduct. See Locurto, 264 F.3d at 164 (citing X-Men, 196 F.3d at 66); McVey, 157 F.3d at 276. In such cases, the district court must

rely only on the facts as alleged in the complaint and assume that those facts, for the purposes of a motion to dismiss, are true. See Locurto, 264 F.3d at 164-65 (citing X-Men, 196 F.3d at 66-67); McVey, 157 F.3d at 276. Indeed, we have recognized that a district court cannot avoid ruling on the merits of a qualified immunity defense when it can resolve the purely legal question of whether a defendant's conduct, as alleged by plaintiff, violates clearly established law. See Medina v. Cram, 252 F.3d 1124, 1130 (10th Cir. 2001) (citing Malik v. Arapahoe County Dep't of Soc. Servs., 191 F.3d 1306, 1315 (10th Cir. 1999)).

The decisions relied upon by Defendants, however, are clearly distinguishable from the instant case. Here, the factual issue involves not whether Defendants' conduct violated a constitutional right, the factual issue involves the threshold question of whether Defendants are entitled to assert qualified immunity in the first instance. Indeed, even the Second Circuit has recognized this distinction in squaring its Locurto holding with its Lawson holding. See Locurto, 264 F.3d at 165 (citing Lawson, 863 F.2d at 263). In this case, the district court made no legal decision whatsoever, explicit or implicit, on the merits of Defendants' motions. The district court only determined that the allegations in the complaint even taken as true did not adequately address whether Defendants were entitled to assert qualified immunity, and thus ordered discovery on that question. Accordingly, the district court's interlocutory order is not appealable.

- 11 -

The dissent argues we have jurisdiction over this appeal, contending evidentiary issues can never arise on a motion to dismiss and the district court effectively decided the legal issue that the facts, as alleged in the complaint, do not entitle Defendants to qualified immunity.[3] We disagree.

First, we reject the dissent's attempt to suggest a circuit split on the issue presented by this appeal, as the cases it cites by the Fifth and Seventh Circuits are inapposite to the Second Circuit cases on which we rely. Neither of the cases relied upon by the dissent involved the review of a district court's determination that the complaint was insufficient on its face to determine whether the defense of qualified immunity was properly before the court.[4] In fact, in both cases, the district court denied defendants' motions to dismiss on their merits, making the

---

[3] Notwithstanding its conclusion that we have jurisdiction over this interlocutory appeal, the dissent contends that we should remand this case to the district court because the complaint, on its face, makes it "extremely difficult" for us to analyze the merits of Defendants' qualified immunity defense. See Dissent at 1 n.1. It appears that the dissent concedes that further factual development is necessary to decide the merits of Defendants' defense, which would support our position that there are times when the allegations contained in the complaint are inadequate to determine whether qualified immunity is even available as a defense. In any event, remand is not the proper course because we do not have appellate jurisdiction in the first place. The only way this case is immediately appealable is if the district court's ruling turned on a question of law, whereby our merits review would not be "extremely difficult."

[4] To our knowledge, the Second Circuit is the only circuit to address whether the denial of immunity at the dismissal stage is immediately appealable when the applicability of that defense could not be determined from the face of the pleadings.

- 12 -

exercise of appellate jurisdiction entirely appropriate.[5]  See Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998); Doe ex rel. Doe v. Hillsboro Indep. Sch. Dist., 81 F.3d 1395, 1399 (5th Cir. 1996).[6]  Further, that these cases state the general proposition that the denial of qualified immunity on a motion to dismiss constitutes a legal decision because Rule 12(b)(6) requires a court to accept as true all well-pleaded facts in the complaint is beside the point.  Of course this proposition is true, but we emphasize that it is only true when the facts alleged in the complaint are well-pleaded.  Here, the district court determined that whether qualified immunity was even available as a defense was unclear because the allegations in the complaint were not well-pleaded, and ordered limited discovery to correct that problem.  Surely the district court has discretion to undertake this course, but regardless, its determination clearly does not constitute a decision on an abstract point of law and is not reviewable under the collateral order doctrine.

---

[5]  Indeed, the Second Circuit has exercised appellate jurisdiction in analogous cases.  See, e.g., Iqbal v. Hasty, 490 F.3d 143, 152 (2d Cir. 2007) ("[A] defendant may appeal a district court's ruling denying qualified immunity when, if a plaintiff's allegations are assumed to be true, the only question is whether the alleged conduct violated a clearly established right.").

[6]  Furthermore, the only dispute in these cases concerned whether defendants' alleged conduct violated plaintiffs' constitutional rights and whether those rights were clearly established.  See Levenstein,164 F.3d at 351-53; Hillsboro, 81 F.3d at 1406.  Therefore, these cases are distinguishable from the instant case for the same reason we earlier distinguished the Second and Fourth Circuit cases relied upon by Defendants, namely that this type of factual dispute does not preclude appellate review.  Supra at 10-11.  For the same reason, we disagree with the dissent's contention that our decision in this case "would make nearly every denial of a motion to dismiss unappealable."  Dissent at 6.

- 13 -

Second, the dissent's argument that evidentiary issues can never arise on a motion to dismiss is belied by Rule 12(b) itself. As acknowledged by the dissent, Rule 12(b) contemplates the possibility of factual insufficiency at the pleading stage and expressly permits the conversion of a motion to dismiss into one for summary judgment to resolve that problem. Dissent at 3. Further, it is well-settled that a district court has the discretion to effect such a conversion, <u>sua sponte</u>, by requesting information outside the pleadings. <u>See</u> 5C Charles Alan Wright & Arthur P. Miller, Federal Practice and Procedure § 1366. Notwithstanding the apparent position of the dissent that defendants who assert qualified immunity must always be spared from discovery,[7] the Federal Rules of Civil Procedure do not operate differently in the context of qualified immunity. <u>See</u> <u>id.</u> ("There is considerable authority to the effect that the conversion provision applies to affirmative defenses raised on a Rule 12(b)(6) motion. As a result, when a defendant's motion to dismiss raises an affirmative defense that is not apparent on the face of the pleadings and outside matter is presented and

_____

[7] To the contrary, the assertion of qualified immunity does not automatically act as a complete bar to discovery. <u>See</u> <u>Mitchell</u>, 472 U.S. at 526 ("Indeed, <u>Harlow</u> emphasizes that even such pretrial matters as discovery are to be avoided <u>if possible</u> . . . .") (emphasis added). The ordering of narrow discovery in qualified immunity cases is entirely permissible. <u>See</u> <u>Garrett</u>, 254 F.3d at 953 ("[q]ualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad") (alteration in the original). More importantly, narrowly tailored discovery orders designed to "uncover only those facts needed to rule on the immunity claim" are not immediately appealable. <u>Id.</u>

- 14 -

accepted, federal courts will generally treat the motion as if it were one for summary judgment.") (footnotes omitted); see also Anderson, 483 U.S. at 646 n.6 ("tailored" discovery may be necessary to resolve factual questions concerning qualified immunity before disposing of the case on summary judgment).

Finally, the dissent claims that Defendants make the legal argument that the issue of whether they were closely supervised by federal officials is "not a necessary predicate to their invocation of qualified immunity" and that our holding denies Defendants the "valuable right to obtain a ruling on this significant legal question, and exposes them to the burden of discovery on an issue that, they contend, should be resolved as a matter of law." Dissent at 5-6. Although Defendants argue the district court's denial of their motions to dismiss constituted an implicit decision that they are not entitled to invoke qualified immunity, see Defendants-Appellants' Response at 9, Defendants do not argue that Richardson does not extend to the facts of this case. To the contrary, Defendants explicitly argue that "this case presents the precise situation envisioned by the Supreme Court in Richardson," and claim that the facts, as alleged in the complaint, demonstrate they were closely supervised. See Aplt. Br. at 9-12; see also Reply Br. at 4-5.

Even if Defendants made this argument (which they do not), it would not change our holding. The district court made no legal ruling whatsoever as to whether Richardson extends to the facts of this case. The district court

recognized that <u>Richardson</u> might apply to this case, but failed to rule either way on this issue because the factual predicate necessary to conduct that analysis, namely Defendants' status at the time their alleged conduct occurred, was unclear from the face of the pleadings.  Therefore, the dissent's claim that the district court's decision constituted a "legal conclusion about the scope of qualified immunity for private parties" does not seem to have record support.

APPEAL DISMISSED.

*Weise v. Casper,* 06-1504, 06-1516.

**McCONNELL**, J., dissenting.

Contrary to the majority's holding, the district court's decision denying the defendants' motions to dismiss on qualified immunity grounds is an appealable order, turning as it does on a pure question of law: whether private citizens voluntarily assisting at a federally-sponsored event, when sued for alleged constitutional violations under *Bivens,* are entitled to invoke the protections of qualified immunity in the absence of proof that they were closely supervised by federal officials. Because the district court answered that legal question in the negative, it denied the defendants' motions for qualified immunity at the dismissal stage and ordered limited discovery to determine whether they were so supervised. As explained below, the court's legal conclusion was in error. The court should have gone on to the merits of the qualified immunity claim: whether the plaintiffs' complaint alleged a constitutional violation, and if so, whether that violation was clearly established.[1] This court has jurisdiction to review that erroneous decision. I therefore respectfully dissent.

---

[1]It seems highly unlikely that a motion to dismiss could be granted at this stage in the proceedings. The allegations in the complaint do not set forth the terms of the alleged federal policy the defendants were enforcing or its asserted authority or justifications, which would make constitutional analysis extremely difficult. But because the district court addressed only the issue of whether the defendants, as private individuals, are entitled to invoke the protections of qualified immunity, the proper course is for this court to remand and allow the district court to sort through the merits issues in the first instance.

## I. Background and Proceedings Below

The plaintiffs claim that the defendants violated their First Amendment rights by ejecting them from a public meeting, paid for by public funds, at which President George W. Bush was speaking.  Allegedly they were ejected because a bumper sticker on their vehicle ("No Blood for Oil") indicated they disagreed with the President.  The defendants are two private citizens who volunteered to assist at the event.[2]  The complaint alleges that the defendants acted "at the direction of and pursuant to polic[i]es of . . . federal officials."  Compl. at 7.  It does not allege that, in the conduct of their responsibilities, the defendants were closely supervised by federal officials.

The defendants each filed a motion to dismiss based on qualified immunity. The district court, based on *Richardson v. McKnight*, 521 U.S. 399 (1997), reasoned that whether the defendants were entitled to invoke the protections of qualified immunity "turn[ed] on whether Defendants Casper and Klinkerman were acting as federal officials or whether they were private parties acting at the direction of federal officials, and whether they were closely supervised." *Weise v. Casper*, No. 05-02355, 2006 WL 3093133, at *4 (D. Colo. Oct. 30, 2006).  On

---

[2]The complaint alleges that Mr. Klinkerman identified himself as a volunteer.  Compl. at 4.  Mr. Casper was identified as a Secret Service agent.  *Id.* If either of them is in fact an agent rather than a volunteer, his right to invoke qualified immunity is not disputed, so for purposes of discussion I will assume *arguendo* that both are volunteers.

the face of the complaint, it was not evident whether the "close supervision" condition was satisfied. The district court denied the motions to dismiss "without prejudice," and granted the plaintiffs' motion for "limited discovery" on this "threshold issue." *Id.* The defendants appealed.

It is not entirely clear what the district court meant by denying the motions "without prejudice." *Id.* Every denial of a motion for qualified immunity is "without prejudice" in the sense that, as the case moves from the dismissal stage to summary judgment to trial to verdict, if facts emerge under which the defendants are entitled to qualified immunity, they may make appropriate motions in district court and take appeals to the court of appeals; the denial of a motion for qualified immunity at an earlier stage does not stand as a bar. *Behrens v. Pelletier*, 516 U.S. 299, 308–09 (1996). On the other hand, having denied the defendants' motions based on the pleadings and ordered discovery, the district court necessarily precluded any renewal of a motion to dismiss. Once discovery—even "limited discovery"—takes place on this point, the defendants' invocation of qualified immunity must be in the form of a motion for summary judgment. *See* Fed. R. Civ. Pro. 12(b)(6) (reference to and reliance on any "matters outside the pleading" causes a motion to dismiss to "be treated as one for summary judgment"); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §1366. Despite the district court's use of the words, "without prejudice," the defendants would not be able to renew their

motions at the dismissal stage, and thus would not be able to vindicate their asserted right to qualified immunity as a matter of law, prior to discovery.

## II. Appellate Jurisdiction

In *Mitchell v. Forsyth*, the Supreme Court addressed whether a district court's decision to deny a claim of qualified immunity on legal grounds is appealable under the collateral order doctrine. 472 U.S. 511, 530 (1985). Ordinarily, denial of a motion to dismiss or a motion for summary judgment is not a final order and is therefore not appealable; but because those entitled to qualified immunity have a right to dispose of the legal proceedings against them as quickly as possible, and because the claim to immunity is sufficiently separable from the merits of a defense, the Court held that defendants are entitled to interlocutory appeals when their motions for dismissal or summary judgment on qualified immunity are denied. *Id.* at 525–28. In *Behrens*, the Court emphasized that immunity "is meant to give government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such *pretrial* matters as discovery. . . .'" 516 U.S. at 308 (quoting *Mitchell*, 472 U.S. at 526). The Court explained that "denial of a motion to dismiss is conclusive as to this right [to avoid discovery]," and deemed it "settled . . . that this right is important enough to support an immediate appeal." *Behrens*, 516 U.S. at 308.

To be sure, as the majority notes, interlocutory appeals are limited "to cases presenting neat abstract issues of law." *Johnson v. Jones*, 515 U.S. 304, 317 (1995) (internal quotation omitted); *see also Behrens*, 516 U.S. at 313. *Johnson* holds that an interlocutory appeal is *not* permitted when the district court denies a motion for summary judgment on the basis of "a *fact*-related dispute about the pretrial record, namely whether or not the evidence . . . was sufficient to show a genuine issue of fact for trial." 515 U.S. at 307 (emphasis in original). But such evidentiary issues can arise only on motions for summary judgment, where the presence of a disputed issue of material fact is a basis for denial. The majority errs in extending this principle to the context of motions to dismiss. A motion to dismiss does not test "evidentiary sufficiency," Maj. Op. at 7, because no actual evidence is or can be offered by either side. Rather, at this stage the court is asked to decide whether, assuming the allegations of the complaint are true, the defendants are entitled to dismissal as a matter of law. That is a legal question, not a factual one.

In this case, the district court conclusively resolved that the defendants had no "right . . . to avoid the burden[] of . . . discovery," *Behrens*, 516 U.S. at 308, on the issue of whether they were closely supervised by federal officials, notwithstanding the defendants' legal argument that such supervision is not a necessary predicate to their invocation of qualified immunity. *See* Appellant's Br. 10–11. Whether the defendants are correct depends on resolution of an

-5-

"abstract"—and important—question of law: whether the Supreme Court's holding that employees of a private, for-profit corporation conducting government functions are not entitled to qualified immunity, *Richardson v. McKnight*, 521 U.S. 399 (1997), also eliminates immunity for private citizens who voluntarily assist in performing such functions at the behest of federal officials. The majority's holding that the district court's order is not appealable denies the defendants the valuable right to obtain a ruling on this significant legal question, and exposes them to the burden of discovery on an issue that can be resolved as a matter of law, on the pleadings. The majority's holding thus directly conflicts with *Behrens* and *Mitchell*.

The majority's interpretation of *Johnson*—that an order denying a motion to dismiss is not appealable if it concludes that "the pleadings are insufficient as to some factual matter," Maj. Op., at 8—would make nearly every denial of a motion to dismiss unappealable. Denial of a motion to dismiss can always be characterized as resting on the conclusion that the facts alleged in the complaint are insufficient to establish the defendant's right to dismissal. Of course, proof of additional facts might well show that the defendant was entitled to prevail, but that does not convert the dismissal question into a "*fact*-related dispute," *Johnson*, 515 U.S. at 307. Rather, a motion to dismiss raises only a question of law: whether, taking the facts in the complaint as true, the plaintiff has a legal claim.

Indeed, the Supreme Court has warned against overreading *Johnson* as the majority does. In *Behrens*, the Court explained that although summary judgment is often denied because "there are controverted issues of material fact . . . *Johnson* surely does not mean that *every* such denial . . . is nonappealable." 516 U.S. at 312–13. All that the district court has held here—because it is all that can be held on a Rule 12(b)(6) motion—is that the facts in the complaint do not show that the defendants are entitled to invoke qualified immunity. That is a legal conclusion about the scope of qualified immunity for private parties, and we must decide whether it is correct.

The majority cites neither Supreme Court nor Tenth Circuit precedent to support its assertion that denials of motions to dismiss raise factual issues and hence may be unappealable. It does cite several cases from the Second Circuit, which also deny jurisdiction over appeals from motions to dismiss on qualified-immunity grounds. *E.g.*, *Almonte v. City of Long Beach,* 478 F.3d 100, 110 (2d. Cir. 2007). The Second Circuit's view, however flies in the face of a better-reasoned decision from the Seventh Circuit, *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998) (Wood, J.). The Seventh Circuit explained that "unlike a motion for summary judgment, which raises in part the question whether the opposing party has demonstrated the existence of disputed facts, a motion to dismiss for failure to state a claim raises only legal issues. This is because a Rule 12(b)(6) motion requires the court to accept as true all well-pleaded facts in the complaint,

drawing all reasonable inferences in favor of the opposing party." *Id.* at 347. The Fifth Circuit has reached the same conclusion. *Doe ex rel. Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *vacated en banc on other grounds*, 113 F.3d 1412 (5th Cir. 1997) ("In the Rule 12(b)(6) context, there can never be a genuine-issue-of-fact-based denial of qualified immunity, as we must assume that the plaintiff's factual allegations are true. Thus, denials of motions to dismiss on the basis of qualified immunity are always 'purely legal' denials."). This is the better view of the law.

I therefore conclude that we have jurisdiction to review the legal question decided by the district court.

### III. The Defendants' Right to Invoke Qualified Immunity

The district court interpreted *Richardson v. McKnight* as holding that private persons sued for constitutional violations committed under color of state or federal law[3] are not entitled to invoke qualified immunity unless these actions were "closely supervised by government officials." *Weise v. Casper*, No. 05-

---

[3]Although the Supreme Court has never said so, I assume that *Richardson* applies not only to the immunities available to state actors under § 1983, but also to those available to federal actors under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), because the two immunities are generally taken to be coterminous. *Butz v. Economou*, 438 U.S. 478, 501 (1978).

02355, 2006 WL 3093133, at *4 (internal quotation marks omitted). This was an overbroad interpretation of Supreme Court precedent.

Prior to *Richardson* the rule in our circuit was that "a private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself." *Eagon ex rel. Eagon v. City of Elk City*, 72 F.3d 1480, 1489 (10th Cir. 1996) (cited in *Richardson*, 521 U.S. at 402) (internal quotation marks omitted). In *Richardson*, however, the Court held that prison guards employed by private, for-profit corporations may not invoke qualified immunity. In so doing, the Court described its holding as "narrow[,]" and limited to "the context in which it arose." *Richardson*, 521 U.S. at 413. The Court expressly noted that the case "does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision." *Id.*

In its review of the historical scope of qualified immunity for private persons in *Richardson*, the Supreme Court found that although there was no general immunity for "private individuals working for profit," nonetheless "the [common] law *did* provide a kind of immunity for certain private defendants, such as doctors or lawyers who performed services at the behest of the sovereign." *Id.* at 407 (citing *Tower* v. *Glover*, 467 U.S. 914, 921 (1984) & Joel Prentiss Bishop,

*Commentaries on Non-Contract Law*, §§ 704, 710 (1889)). The Court then offered two functional justifications for concluding that private prison guards are not entitled to qualified immunity. First, "[c]ompetitive pressures mean . . . that a firm whose guards are too timid will face threats of replacement by other firms with records that demonstrate their ability to do both a safer and a more effective job." *Richardson*, 521 U.S. at 409. This competitive pressure thus substitutes for the protection of qualified immunity as a means of ensuring "the vigorous exercise of official authority." *Id.* at 408, *quoting Butz*, 438 U.S. at 506 (1978). Second, private prison firms faced a labor market with different economic incentives—they were required to buy comprehensive insurance for civil rights torts, and were free to offer higher pay or extra benefits to their guards because they were liberated from civil service restraints. *Richardson,* 521 U.S. at 411–12.

Similar considerations explain the Court's earlier decision in *Wyatt v. Cole*, 504 U.S. 158 (1992), which denied the protection of qualified immunity to private persons who had invoked state replevin, garnishment, and attachment statutes later held to be unconstitutional. Because the defendants were acting out of their own economic interest and not for any public purpose, the traditional purposes of qualified immunity would not be served by extending it to the defendants. *Id.* at 167–68.

Neither of those justifications applies to private persons who volunteer to assist federal officials in the conduct of public functions. There are no

-10-

"[c]ompetitive pressures," *Richardson*, 521 U.S. at 409, that would spur private volunteers to a vigorous performance of their responsibilities in the face of the prospect of *Bivens* suits. Such persons receive no higher pay or benefits or other economic advantage, and no private employer is forced to obtain insurance on their behalf. Indeed, in terms of the functional justification identified in *Richardson*, qualified immunity might well be of greater necessity for persons voluntarily assisting the government than it is for government officials, who at least are being paid to do the job and might be fired for lax performance. If government officials need qualified immunity lest the "fear of being sued . . . dampen the ardor of all but the most resolute, or the most irresponsible," *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (internal quotation marks omitted), then private citizens who cooperate with the government out of motives of public service need it *a fortiori*.

*Richardson* is best read not as a broad denial of qualified immunity to less-than-closely-supervised private persons, but as a narrow holding that the incentive system created by immunity can be eliminated where the competitive pressures of the private market provide a substitute. The general rule of *Eagon* should continue to control for those not subject to the competitive pressures deemed relevant in *Richardson*.

This view of *Richardson* is confirmed by our decision in *Rosewood Servs., Inc., v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1164 (10th Cir. 2005),

-11-

where we held that a non-profit "community developmental disability organization[]" and its president were not entitled to immunity under *Richardson*. There, we examined the market for such disability organizations and concluded that even though the market was heavily regulated, the "competitive market forces [were] sufficiently present" to provide a substitute incentive system. 413 F.3d at 1169. Thus, "sufficient competitive market pressures exist[ed] to lessen timidity on the part of" the organization and its employees and eliminated the need for qualified immunity. *Id*.

The defendants here more resemble the "private individual briefly associated with a government body, serving as an adjunct to government in an essentially governmental activity," which the Court excluded from its rule in *Richardson*, than they do the employee of "a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, [which] undertakes that task for profit and potentially in competition with other firms." *Richardson*, 521 U.S. at 413. Therefore, the allegation that the defendants here were directed by federal officials and acted pursuant to federal policy is enough for me to conclude that they are entitled to raise a qualified immunity defense at this stage of the litigation, without proof that their activities were closely supervised by federal officials.

### III. Conclusion

The district court's order denying the defendants' motions to dismiss is appealable under the collateral order doctrine, and the court's holding that the defendants are not entitled to invoke qualified immunity without proof that they acted under close official supervision should be reversed. I therefore respectfully dissent from the majority's opinion.